## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENLIN XIAO                                    )
*on his own behalf and on behalf of others*    )
*similarly situated*,                           )
                                               )
                          Plaintiff,           )        2:21-cv-00482
                                               )
                          v.                   )
                                               )
SICHUAN GOURMET LLC, et al.,                   )
                                               )
                          Defendants.          )

## <u>OPINION</u>

**Mark R. Hornak, Chief United States District Judge**

 In this putative collective and class action, Plaintiff brings wage and hour law claims against four (4) enterprise Defendants and six (6) individual Defendants who are associated with those enterprises. One (1) enterprise Defendant, Sichuan Gourmet LLC, and one (1) individual Defendant, Weixiang You, have filed an Answer. (ECF No. 50.) The remaining Defendants ("Moving Defendants") have filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the Amended Complaint fails to state a claim upon which relief may be granted with respect to the Moving Defendants. (ECF No. 51.) For the reasons stated below, the Court GRANTS the Moving Defendants' Motion with respect to each of the Moving Defendants other that Sichuan Gourmet II LLC. The Motion to Dismiss with respect to Sichuan Gourmet II LLC is DENIED.

## I.      BACKGROUND

This case involves allegations of unfair labor practices in violation of the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act of 1968 ("PAMWA"). (ECF No. 38, at 2.)[1] On April 9, 2021, Plaintiff filed suit against ten (10) Defendants, including four (4) enterprise Defendants—Sichuan Gourmet LLC ("SG I"), Sichuan Gourmet II LLC ("SG II"), Lotus Food Inc, and OC Partners LLC—and six (6) individual Defendants—Weixiang You, Yongjun Zhang, Yongpeng Xia, Zhong Zhuang, Kuohwa Wang, and Taimei Wang. (ECF No. 1.)

On June 23, 2021, all ten (10) Defendants filed a Motion to Dismiss for Insufficient Service of Process or Failure to State a Claim. (ECF No. 22.) Plaintiff sought leave to Amend on July 7, 2021, (ECF No. 33), which this Court granted on July 12, 2021, (ECF No. 36). Plaintiff then filed the First Amended Complaint ("the Amended Complaint") on August 6, 2021. (ECF No. 38.)

On October 11, 2021, Defendants SG I and Weixiang You filed an Answer. (ECF No. 50.) That same day, the remaining Defendants—SG II, Lotus Food Inc, OC Partners LLC, Yongjun Zhang, Yongpeng Xia, Zhong Zhuang, Kuohwa Wang, and Taimei Wang ("Moving Defendants")—filed a Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"), along with a supporting brief and affidavit. (ECF Nos. 51–53.) On October 25, 2021, Plaintiff filed a Brief in Opposition ("Response") and supporting affidavit. (ECF Nos. 55, 56.) Defendants did not file a Reply or otherwise indicate an intention to respond to Plaintiff's Response. The Court has

---

[1] 29 U.S.C. § 201 *et seq.* and 43 Pa. Cons. Stat. § 333.101 *et seq.*, respectively. The Court notes that while there are also references in the Amended Complaint to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*, these references are limited to the Introduction, Statement of Facts, and Prayer for Relief. (ECF No. 38, at 2–3, 12, 21.) There is no mention of the WPCL in either Count I or Count II of the Statement of Claims. (*Id.* at 17–19.) The Court also notes that neither party references the WPCL in the briefing regarding the current Motion to Dismiss. (ECF Nos. 52, 55.) The Court therefore does not address the WPCL in this Opinion because no claim is based on it.

determined that oral argument is not necessary to resolve the Motion, and it is now ripe for disposition.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Detailed factual allegations are not required to survive a Rule 12(b)(6) motion, but "a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[M]ere conclusory statements" similarly "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id.* at 555). Instead, the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555–56. In order to cross "the line between possibility and plausibility," the complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *id.* at 557). The Court should not dismiss a complaint, however, simply because it has provided an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); *see also Andrews v. Monroe Cnty. Transit Auth.*, 523 F. App'x 889, 891 (3d Cir. 2013) ("The Federal Rules do not require a plaintiff to set out a legal theory at the pleadings stage, and courts have upheld a complaint against a Rule 12(b)(6) motion to dismiss even though the plaintiff appeared to rely on an inappropriate theory.").

The Third Circuit has operationalized the *Iqbal* and *Twombly* pleading standard through a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and

evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Ultimately, the complaint must "show" that the plaintiff is entitled to relief based on the facts that the Court must presume as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

## B. Theories of Liability

### 1. Requirement of employer-employee relationship

A threshold question in FLSA cases "is whether the plaintiff has alleged an actionable employer-employee relationship." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014).[2] The roles of employee and employer are broadly defined in the FLSA. *Id.*; *see also In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) ("The FLSA defines employer 'expansively,' and with 'striking breadth.'" (citation omitted) (first quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); and then quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947))). To "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). An "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). And an "employer" can be either a business entity or an individual— it includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d).

The Third Circuit has explained that in the context of the FLSA, "economic reality rather than technical concepts is to be the test of employment." *In re Enterprise*, 683 F.3d at 467 (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). District courts seeking to

---

[2] The Motion to Dismiss and associated briefing focus exclusively on arguments related to the requirements of the FLSA. As such, that is where the Court has directed the focus of this Opinion. The Court notes that Pennsylvania courts look to the FLSA in interpreting the PMWA. *Baum v. AstraZeneca LP*, 372 F. App'x 246, 248 (3d Cir. 2010); *Whited v. New Cafe at Greystone Gardens*, Civ. No. 3:18-cv-1811, 2020 WL 1271681, at *5 (M.D. Pa. Mar. 17, 2020); *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020).

determine whether an employee-employer relationship exists are directed to begin by analyzing

four (4) factors—specifically, the alleged employer's:

1. Authority to hire and fire employees;
2. Authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
3. Day-to-day supervision, including employee discipline; and
4. Control of employee records, including payroll, insurance, taxes, and the like

*Id.* at 469. The Court will refer to these as the "*Enterprise* control factors."

 *In re Enterprise* makes clear that courts should consider the "total employment situation,"

and a court may conclude that an employment relationship exists even if all the factors do not point

in the same direction. *Id.* at 469, 471. Moreover, the *Enterprise* factors are not meant to be

exhaustive and should not be "blindly applied." *Id.* at 469. Other "indicia of 'significant control'"

which "do[] not fall neatly within one of the [four] factors" may be persuasive. *Id*. at 469–70. And

while the level of control must be "significant," it need not be direct. *Id.* at 468 (citing *NLRB. v.*

*Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)).

  *2.   Joint employment under the FLSA*

 Under the FLSA, an individual may be considered an employee of multiple employers at

the same time. *In re Enterprise*, 683 F.3d at 467. These employers may be "separate and distinct,"

as when an employee works for a restaurant and an entirely unrelated clothing store. *See id.* But

they may also be considered "joint employers" under certain circumstances, a classification which,

among other things, allows for joint and several liability for violations of the FLSA. *Thompson v.*

*Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014). For example, employers may be

found to be "joint employers" where "both employers 'exert significant control' over the

employee" because "'one employer controls, is controlled by, or is under common control with

the other employer.'" *Id.* (first quoting *NLRB. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d

1117, 1124 (3d Cir. 1982); and then quoting 29 C.F.R. § 791.2(b)(3)) But in order to be considered a joint employer of any given employee, each putative employer must meet the "significant control" test outlined in *In re Enterprise* with respect to that employee. *See id.* at 149. That is, each "joint employer" must first be an "employer."

In addition to the corporate entity, "a company's owners, officers, or supervisory personnel may also constitute 'joint employers'" under the FLSA. *Id.* at 153. Liability for individual actors is appropriate where they "exercise[d] 'supervisory authority over the complaining employee and [were] responsible in whole or part for the alleged violation' while acting in the employer's interest." *Id.* (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)).

As in the overall test for an employment relationship articulated in *In re Enterprise*, the test for the status of individuals is functional—simply alleging that individual actors hold a certain position in the corporate organizational chart is insufficient. *See Mackereth v. Kooma, Inc.*, Civ. No. 14-cv-4824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) ("Plaintiffs must allege something more than the mere positions of the individual defendants to show that they are Plaintiffs' employers."); *Guzman v. Mana*, Civ. No. 17-cv-2551, 2018 WL 10150989, at *3 (D.N.J. Dec. 6, 2018) (granting motion to dismiss in favor of alleged owner where complaint was "devoid of facts establishing that [he] had any interactions with Plaintiffs, let alone that he exercised supervisory authority or was responsible for the alleged overtime violations"). Instead, the individual must actually "exercise[] control over the [employee's] work situation." *Haybarger*, 667 F.3d at 417 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)). Such control can be demonstrated through the *Enterprise* control factors discussed above. *See id.* at 418.

### 3.  Single employer under the FLSA

In certain areas of labor and employment law, "two nominally separate entities" may be considered to be "part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *NLRB. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). This is a district theory from that of joint employment.[3] Distinguishing the two theories in the context of the National Labor Relations Act (NLRA), the Third Circuit has explained that while a joint employment relationship may be found where there are multiple "independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship,'" a single employer exists where "two nominally independent enterprises, in reality, constitute only one integrated enterprise." *Id.* (quoting *NLRB v. Checker Cab Co.,* 367 F.2d 692, 698 (6th Cir. 1966)).

---

[3] It is also distinct from the concept of "enterprise coverage" under the FLSA. Initially, the FLSA only covered employees who were themselves "engaged in commerce or in the production of goods for commerce." *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517 (1973). This is referred to as the "individual coverage" provision. *E.g., Raptis v. DPS Land Servs., LLC*, Civ No. 19-cv-1262, 2020 WL 2572190, at *3 (W.D. Pa. May 21, 2020). When the FLSA was amended in 1961, however, the "enterprise coverage" provision was added, which brought individuals "employed in an enterprise engaged in commerce" under the FLSA's wage and hour protections. *Brennan*, 410 U.S. at 516–17. An "enterprise" is defined within the FLSA as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor." 29 U.S.C. § 203(r)(1). It excludes franchises and certain other business arrangements not at issue here. *Id.* Notably, an enterprise can be composed of a single business, as it was in *Brennan*, or it may involve multiple corporate entities.

In addition to covering employees who are not themselves directly engaged in commerce but who work for employers who are so engaged, the "enterprise coverage" provision can be used to aggregate the sales volume of multiple corporations in order to meet the $500,000 minimum required for FLSA coverage. *See, e.g., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–16 (9th Cir. 2003) (aggregating the revenue of two health service businesses); *Martin v. Deiriggi*, 985 F.2d 129, 133 n.2 (4th Cir. 1992) (hotel and restaurant); *Donovan v. Sideris*, 688 F.2d 74, 75–76 (8th Cir. 1982) (four hotels); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 648 (N.D. Ill. 2007) (two restaurants).

Importantly, the question of whether a group of businesses meets the coverage requirements of the FLSA as an "enterprise" is distinct from the question of whether those businesses are in an employer-employee relationship with a particular worker for the purposes of FLSA liability. *See Morgan*, 625 F. Supp. 2d at 648 ("Whether two companies constitute a single enterprise and whether they may be liable as joint employers are 'technically separate issues.'") (quoting *Chao*, 346 F.3d at 917)); *see also id.* (collecting cases).

The Third Circuit considers four (4) factors in determining whether two companies constitute a "single employer" in the context of the NLRA:

1. The interrelation of operations;
2. Whether there is shared common management;
3. Whether there is a centralized control of labor relations; and
4. Whether there is common ownership or financial control.

*Katz v. DNC Servs. Corp.*, Civ No. 16-cv-5800, 2019 WL 4752056, at *7 (E.D. Pa. Sept. 27, 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)); *Browning-Ferris*, 691 F.2d at 1122. The test considers the totality of the circumstances, however, and "[n]o single factor is dispositive." *Nesbit*, 347 F.3d at 84 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001)).[4] Ultimately, a "single employer" relationship "is characterized [by the] absence of an 'arm's length relationship found among unintegrated companies.'" *Browning-Ferris*, 691 F.2d at 1122 (quoting *Local 627, International Union of Operating Engineers v. NLRB*, 518 F.2d 1040, 1045–46 (D.C. Cir. 1975), *aff'd on this issue sub nom. South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. 800 (1976)).

Where "two nominally separate entities are [determined to be] a single employer, they are jointly and severally liable for remedying unfair labor practices committed by either of them." *Grane Health Care v. NLRB*, 712 F.3d 145 (3d Cir. 2013) (citing *id.* at 1122). The single employer test has other applications in the NLRA context, including determining whether two firms collectively meet the minimum business volume required for the National Labor Relations Board (NLRB) to have jurisdiction; determining whether nominally separate firms are "neutral" in the

---

[4] The Third Circuit has indicated, however, that some factors are more important than others. *See Grane Health Care v. NLRB.*, 712 F.3d 145, 150 (3d Cir. 2013) ("No one factor is controlling, although the first three factors, particularly centralized control over labor relations, are generally considered more compelling that the fourth [(common ownership)]." (citing *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir.1983)).

context of secondary boycotts; and determining whether the obligations of a collective bargaining agreement apply to a second firm. *Pearson*, 247 F.3d at 486. As discussed below, the Moving Defendants dispute whether the single employer theory applies in the context of the FLSA, and the Third Circuit does not appear to have previously applied it in that context.[5]

## III.   DISCUSSION

### A.  Individual Defendants

The First Amended Complaint names six (6) individual Defendants, five (5) of whom have joined the Motion to Dismiss.

The Court will begin by "identifying the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). In order to maintain claims against these individuals, Plaintiff must demonstrate that they "exercise[d] 'supervisory authority over [him] and [were] responsible in whole or part for the alleged violation' while acting in the employer's interest." *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) (quoting *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)). "[A]n individual supervisor has adequate authority over the complaining employee when the supervisor 'independently exercise[s] control over the work situation.'" *Haybarger*, 667 F.3d at 417 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)). Courts in the Third Circuit employ the *Enterprise* control factors to determine whether a supervisor exercises sufficient control to qualify as an employer. *See, e.g.*, *Perez v. Davis Design & Dev., Inc.*, Civ. No. 13-cv-1118, 2013 WL 6835095 (W.D. Pa. Dec. 23, 2013) (citing *id.* at 418–19).

---

[5] *See Goh v. Nori O Inc.*, No. 2:16-CV-2811, 2020 WL 7640518, at *9 (D.N.J. Dec. 23, 2020) ("[A]s the parties agree, 'there is no Third Circuit precedent explicitly speaking to the issue of whether the single enterprise test can be used to impose liability in an FLSA overtime case.'"); *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226, 236 (E.D. Pa. 2011) ("[T]here is no Third Circuit precedent which speaks to the issue of whether the integrated enterprise test can be used in this circuit to impose direct liability in a FLSA overtime case.")

The First Amended Complaint alleges that Defendant Weixiang You was Plaintiff's "Boss," and that Defendant You hired and fired Plaintiff, determined Plaintiff's pay, paid Plaintiff, and had responsibility to maintain Plaintiff's payroll records. (ECF No. 38, at 5.) Defendant You, however, has filed an Answer and is not involved in the present Motion to Dismiss. (ECF No. 50.)

With respect to the individual Defendants who have filed the current Motion to Dismiss, the Amended Complaint alleges that each individual Moving Defendant:

> (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at SICHUAN GOURMET LLC d/b/a Sichuan Gourmet; SICHUAN GOURMET II LLC d/b/a Sichuan Gourmet; LOTUS FOOD INC d/b/a Lotus Food Company; and OC PARTNERS LLC d/b/a Lotus Food Company.

(ECF No. 38, at 6–9.) The Moving Defendants argue that these allegations constitute a "boilerplate recitation of the *Enterprise* control test." (ECF No. 52, at 9.) The Court agrees. Under *Bell Atl. Corp. v. Twombly*, "a formulaic recitation of the elements of a cause of action" is insufficient to survive a Motion to Dismiss, 550 U.S. 544, 555 (2007). And pursuant to the three-step test outlined in *Malleus*, the Court must strike "allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" 641 F.3d at 563 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The boilerplate allegations quoted above are entirely devoid of specificity. Moreover, they refer generally to "employees" at all four enterprise Defendants; they do not suggest that any of the individual Moving Defendants had any control over *Plaintiff in particular*.

Having stricken the boilerplate allegations just discussed, the Court will proceed to identify and review any other allegations relating to the individual Moving Defendants, considering both the Amended Complaint and supporting Affidavit. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d

Cir. 2010) (a court deciding a motion to dismiss considers the complaint, attached exhibits, and matters of public record). Those allegations are as follows.

First, the Plaintiff lists the positions held by the individual Moving Defendants at the four enterprise Defendants. Yongjun Zhang is listed as the owner of SG I; Yongpeng Xia is listed as an officer/agent of SG II; Zhong Zhuang is listed as the manager of Lotus Food Inc and as an officer/agent of SG II; Kuohwa Wang is listed at the President of Lotus Food Inc; Taimei Wang is listed as the Treasurer and Vice President of Lotus Food Inc. Providing titles or positions, without more, however, is insufficient to demonstrate control. *E.g.*, *Mackereth v. Kooma, Inc.*, Civ. No. 14-cv-4824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) ("Plaintiffs must allege something more than the mere positions of the individual defendants to show that they are Plaintiffs' employers.").

Plaintiff also argues that each of the individual Moving Defendants should be held liable for the alleged FLSA violations because they each have "some sort of supervisory power in each of the corporations." (ECF No. 55, at 6.) Even assuming that the Plaintiff established an employment relationship with each of the enterprise Defendants, that bald statement regarding supervisory power would be insufficient on its own to hold the individual Defendants liable. At this stage in the litigation, Plaintiff must instead make sufficient factual allegations to establish that each of the individual Moving Defendants distinctly held supervisory authority over the Plaintiff specifically and that each of them exercised sufficient control over the Plaintiff's employment such that the alleged violations could be attributable to their actions. *See Haybarger*, 667 F.3d at 417–18. The Court concludes that the general allegation that each Defendant exercised supervisory authority at one or more of the involved businesses is both conclusory and not

11

sufficiently connected to this particular Plaintiff. Under *Malleus*, this allegation must also be stricken.

After reviewing the allegations against the individual Moving Defendants and striking the allegations that are merely conclusory and not entitled to the assumption of truth, the Court concludes that there are simply no factual allegations to establish that any of the individual Moving Defendants exercised control or supervisory authority over the Plaintiff. The Motion to Dismiss will be granted as to each of the individual Moving Defendants.

### B. Enterprise Defendants

The Amended Complaint names four (4) enterprise Defendants, three (3) of whom have filed a Motion to Dismiss. The remaining Defendant, SG I, has filed an Answer. (ECF No. 50.) According to the Amended Complaint, SG I was Plaintiff's primary work location, where he worked as a "fry wok." (*See* ECF Nos. 38, at 9, 13; 38-7, at 2.) Additionally, Plaintiff was paid by SG I, regardless of whether he did any work at a second restaurant location (SG II). (ECF No. 38-7, at 2.)

While SG I was his primary work location, Plaintiff alleges that he would occasionally be sent to work at SG II for a period of one to three days, usually on less than one day's notice. (*Id.*) Plaintiff also alleges that the two restaurants shared a website, jointly processed customers' online orders, shared certain supplies, and also shared certain employees in addition to Plaintiff. (*Id.* at 2–4; ECF No. 38, at 9–10.) Additionally, Plaintiff alleges that a grocery store named Lotus Food[6]

---

[6] Throughout the First Amended Complaint, Plaintiff refers to Lotus Food Inc and OC Partners LLC in tandem. (*See, e.g.*, ECF No. 38, at 11 ("LOTUS FOOD INC d/b/a Lotus Food Company; OC PARTNERS LLC d/b/a/ Lotus Food Company would pack their left-over ingredients, including vegetables and meats, that were not sold at the supermarket" for transfer SG I and SG II)) The Complaint specifies that both businesses have the same principle place of business and both "do business as" Lotus Food but does not specify whether or what sort of corporate structure connects the companies. References to the entity "Lotus Food" throughout this Opinion generally pertain to both businesses.

was part of a common enterprise with the two restaurants (SG I and SG II). (ECF No. 38, at 11.) The Amended Complaint states that at the end of each week, Lotus Food would provide unsold items to the two restaurants for use as raw ingredients. (*Id.*; ECF No. 38-7, at 3.) It also alleges that SG I and SG II employees received an "employee discount" when shopping at Lotus Food and that SG I, SG II, and Lotus Food had an annual joint Chinese New Year celebration. (ECF Nos. 38, at 11; 38-7, at 3–4.) Finally, Plaintiff states that Defendant Zhong Zhuang is both the Manager of Lotus Food and an officer/agent of SG II. (ECF No. 38, at 11.)

As an initial matter, the Court notes that the Amended Complaint is not clear as to whether it is seeking to impose liability on the enterprise Defendants on a theory that they are joint employers, a single employer, or both. First, the Complaint states that all four enterprise Defendants "[c]onstitute as [sic] an enterprise," and alleges that the four businesses are an "'enterprise engaged in commerce' within the meaning of the FLSA." (*Id.*) This seems to be a reference to the "enterprise coverage" provision at 29 U.S.C. § 203(r)(1). But the Court's review of the cases applying that provision to establish coverage indicates that a finding that two businesses constitute an enterprise for the purposes of the "enterprise coverage" provision does not obviate the separate need to establish liability for each business entity. *See supra* note 3.[7] And any finding of liability must be predicated on the existence of an employer-employee relationship,

---

[7] The Amended Complaint does make reference to the factors underlying enterprise coverage where it alleges that the four enterprise Defendants "constitute as an enterprise as the terms defined by 29 USC §203 (r ) as they share staff, including Plaintiff, pay Plaintiff for the work performed at the enterprise, and are otherwise engaged in related activity preformed though uniformed operation and/or common control for a business purpose, and are co-owned by the same partner." (ECF No. 38, at 9.) As discussed at note 3, *supra*, establishing an "enterprise" for the purposes of FLSA coverage does not automatically establish liability, as liability requires establishing an employer-employee relationship. There may be some overlap between the factors considered in the "enterprise coverage" provision and those required to establish a "single employer" for the purposes of liability, but they are independent analyses.

The Court also notes that there does not appear to be a need in this case to aggregate the sales volume of multiple businesses in order to meet the FLSA's coverage minimum, as might be possible using the "enterprise coverage" provision. The First Amended Complaint alleges that each of the four businesses is "a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year. (ECF No. 38, at 4–5.) And the Moving Defendants do not dispute these allegations in their Motion to Dismiss.

either because the businesses constitute joint employers or because they comprise a single employer. *Id.*

On the question of liability, the Amended Complaint alleges that the four enterprise Defendants "are joint employers of Plaintiff." (ECF No. 38, at 9.) This would seem to suggest a theory of liability based on joint employment. The factual allegations, however, focus primarily on the connections between the four businesses, rather than on the connections between each business and the Plaintiff such as would be required to establish joint employment under the *Enterprise* control test. Because the Court is focused on whether the Plaintiff has stated a claim on which relief may be granted under any legal theory, the Court will consider whether the Plaintiff has adequately pled under either a joint or single employer theory of liability. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin [a] plaintiff's claim for relief to a precise legal theory.")

    *1.  Joint employer liability*

In order to establish joint employer liability against the enterprise Defendants, Plaintiff must demonstrate that the Defendants exercised significant control under the *Enterprise* control test. While the *Enterprise* control factors are not meant to be exhaustive and should not be "blindly applied," *In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 469 (3d Cir. 2012), they provide a useful starting place for the Court's analysis.

The Moving Defendants argue that "Plaintiff fails to adequately plead that the Moving Defendant was his employer because it exercised no control over him." (ECF No. 52, at 8.) The Court agrees. As discussed above, the Amended Complaint indicates that Weixiang You was Plaintiff's "Boss," and hired, fired, paid, and generally supervised Plaintiff. (ECF No. 38, at 5.) There are no specific factual allegations to indicate whether or how any of those actions by

Weixiang You should somehow be attributed to SG II or Lotus Food. In fact, there are no specific factual allegations to indicate that *anyone* at SG II or Lotus Food exercised *any* control over Plaintiff at *any* time.[8]

Plaintiff does indicate that he occasionally worked for one to three days at SG II, but the Amended Complaint lacks any factual allegations as to who provided supervision or otherwise dictated Plaintiff's conditions of employment during the days he worked at SG II. (*See* ECF Nos. 38, at 9; 38-7, at 2.) It is certainly possible that someone at SG II provided direction, but without more, the Court cannot say that it is plausible. With regard to Lotus Food, there are no indications in the Amended Complaint that Plaintiff ever worked at that establishment. The Court concludes that the Amended Complaint does not contain sufficient allegations to state a claim against any of the three enterprise Moving Defendants under a theory that they are joint employers of Plaintiff.

### 2.  *Single employer liability*

Many of the factual allegations in the Amended Complaint strike the Court as more suited to a single employer theory of liability rather than to one of joint employment. The single employer theory asks whether "two nominally independent enterprises" are really "part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *NLRB. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). In determining whether two companies constitute a "single employer," the Third Circuit considers the level of interrelation of operations, whether there is shared common management, whether labor relations are under centralized control, and whether there is common ownership or financial control. *Katz v. DNC*

---

[8] As previously discussed, the boilerplate allegations that each of the individual Defendants engaged in each of the *Enterprise* control factors at each of the four businesses represent conclusory allegations and have been disregarded for the purpose of the Court's analysis.

*Servs. Corp.*, Civ. No. 16-cv-5800, 2019 WL 4752056, at *7 (E.D. Pa. Sept. 27, 2019) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84 (3d Cir. 2003)).

As an initial matter, Defendants argue that "there is no authority that the Third Circuit adopted the 'single enterprise' test in the FLSA context." (ECF No. 52, at 6.) That test developed in the context of the NLRA, and Defendants argue that because "the FLSA and the [NLRA] address[] different aspects of the employment relationship," the NLRA-centric test "may not necessarily 'self-steer' to the FLSA context." (*Id.* at 15.) In support, Defendants point to the fact that in *Nesbit*, the Third Circuit declined to extend the single employer test from the NLRA to the context of Title VII litigation. (*Id.* at 14 (citing 347 F.3d at 85).) The *Nesbit* Court based its decision on its conclusion that the NLRA and Title VII are animated by different policy considerations. 347 F.3d at 85. The *Nesbit* Court determined that while "the NLRB's jurisdiction was intended to be expansive," the purpose of Title VII's fifteen-employee minimum was to insulate small companies from complex regulatory requirements; as a result, the Court concluded that Title VII should be strictly construed and that the specific single employer theory developed in the NLRA context should not apply. *Id.*[9]

Defendants appear to be correct that the Third Circuit has not yet endorsed a "single enterprise" theory in the FLSA context. *Goh v. Nori O Inc.*, Civ. No. 16-cv-2811, 2020 WL 7640518, at *9 (D.N.J. Dec. 23, 2020); *see also Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d 226, 236 (E.D. Pa. 2011) ("[T]here is no Third Circuit precedent which speaks to the issue of whether the integrated enterprise test can be used in this circuit to impose direct liability in a FLSA overtime case."). This Court concludes, however, that if properly pled, a "single employer" theory could be appropriate in the FLSA context. Here's why.

---

[9] The Court instead "adopt[ed] a different framework, tailored to Title VII's policy goals." *Id.*

First, the Court concludes that the concerns expressed in *Nesbit* about Title VII do not necessarily translate to the FLSA. For one thing, the FLSA explicitly allows for the aggregation of business volume across multiple corporations where they constitute an "enterprise" as defined in 29 U.S.C. § 203(r)(1). The existence of the "enterprise coverage" provision suggests that, at least for some purposes, the FLSA contemplates considering nominally separate entities as part of a "single integrated enterprise." And the factors that make two corporations an "enterprise" for the purpose of the "enterprise coverage" provision—particularly the question of whether there is unified operation or common control—have some overlap with the factors that make two corporations a "single employer" for the purpose of the NLRA. *Compare* 29 U.S.C. § 203(r)(1), *with Nesbit*, 347 F.3d at 84. Additionally, the Third Circuit has long held that the FLSA is intended to have broad reach. *See, e.g.*, *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) (explaining that the breadth of the definitions of employer and employee in the FLSA is "intentional and obvious"); *in re Enterprise*, 683 F.3d at 467 ("[T]he FLSA defines employer 'expansively' and with 'striking breadth.'" (first quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); and then quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947))).[10]

Second, the Court notes that other district courts in the Third Circuit have recognized that a theory of "single employer" liability is (or at least *may be*) applicable in the FLSA context. In *Jackson v. Art of Life, Inc.*, a magistrate judge in the Eastern District of Pennsylvania determined

_____

[10] The Court does not consider recent decisions from the Supreme Court and the Third Circuit, indicating that certain aspects of the FLSA should be "fairly construed," to be to the contrary. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (declining to construe exemptions from the FLSA narrowly and explaining that "[t]he narrow-construction principle relies on the flawed premise that the FLSA '"pursues"' its remedial purpose '"at all costs."'"); *Sec'y United States Dep't of Lab. v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) ("'[A] fair reading' of the FLSA, neither narrow nor broad, is what is called for." (quoting *id.*)). No "broad" or "narrow" construction (as a matter of statutory interpretation) is necessary to conclude that the definitions of "employer" and "employee" in the FLSA are facially quite expansive.

that two corporate defendants were liable as a single integrated enterprise after concluding that the second company "had very little existence independent of" the first company. 836 F. Supp. 2d 226, 237 (E.D. Pa. 2011). In that case, the second company received all of its work assignments through subcontracts with the first company, had no assets, and shared management with the first company. *Id.* at 234.

Other cases, including one from this Court, have recognized that the single employer theory may apply in the FLSA context, but have declined to find that it has been established on the facts presented. *See Williams v. Bob Evans Restaurants, LLC*, 2020 WL 4692504 (W.D. Pa. Aug. 13, 2020) (recognizing single employer theory of liability but determining that the allegations proffered in favor of it were bare legal conclusions that could not survive a motion to dismiss); *Goh*, 2020 WL 7640518, at *9 (granting summary judgment in favor of a second corporate defendant and declining to apply an integrated enterprise theory where the businesses were "distinct entit[ies] with separate employees and different functions" and where there was "nothing in the record to suggest a centralized control of labor or that either business had the authority to operate the other."); *Katz*, 2019 WL 4752056 (articulating the single employer factors from the NLRA context but then concluding that the allegations were not sufficient to establish liability under that theory); *Davis v. Abington Memorial Hosp.*, 817 F. Supp. 2d 556 (E.D. Pa. 2011) (recognizing single employer theory in FLSA context but determining that Plaintiffs had failed to plead basic information necessary to demonstrate that the defendants were liable as Plaintiffs' employers under any theory of liability).

This Court now concludes that, when properly pleaded, a "single employer" theory does apply in the context of the FLSA. The Court further concludes while that Plaintiff has not put forth sufficient allegations to establish that all four enterprises involved here (including both the

restaurants and Lotus Food[11]) constitute a single employer, the Plaintiff has sufficiently alleged circumstances which would support a finding that SG I and SG II constitute a single employer.

Beginning with Lotus Food, Plaintiff has alleged that Lotus Food transferred unsold raw ingredients to SG I and SG II at the end of each week; that employees of SG I and SG II received an "employee discount" at Lotus Food; that there was a shared Chinese New Year Celebration involving employees of SG I, SG II, and Lotus Food; and that Defendant Zhong Zhuang was the Manager of Lotus Food and also an officer/agent of SG II (ECF Nos. 38, at 9–12; 38-7, at 2–4.)

Applying the "single employer" factors—interrelation of operations, shared common management, centralized control of labor relations, and common ownership or financial control—the Court concludes that the allegations are simply insufficient as a matter of law to establish that Lotus Food is part of a "single employer" with SG I and SG II. The transfer of unsold ingredients could *possibly* be an indication of interrelated operations, but it could just as easily reflect an arms-length business relationship between two independent enterprises. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("In order to cross 'the line between possibility and plausibility,' the complaint must do more than 'plead[] facts that are "merely consistent with" a defendant's liability.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))). The Court is similarly unable to conclude that it is *plausible* that the corporate Defendants shared common management, ownership, or financial control based solely on the conclusory allegation that Defendant Zhuang concurrently held the positions of Manager at Lotus Food and officer/agent of SG II. And the allegations that the companies had a shared employee discount system and a common annual celebration fall far below the level of interrelation necessary to establish that Lotus Food and the

---

[11] Lotus Food Inc and OC Partners LLC. *See supra* note 6.

two restaurants can be considered a "single employer" "for all purposes." *NLRB. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982).

The question of whether SG I and SG II constitute a single employer is in the Court's view, much closer, and ultimately the Court concludes that Plaintiff has plausibly alleged that SG I and SG II constitute a single employer.

Plaintiff specifically alleges that multiple employees of SG I (including himself) were directed with some frequency to report instead to SG II, and that Plaintiff received transportation to SG II from either his supervisor at SG I or by riding in the company transportation van. (ECF No. 38-7, at 2.) Plaintiff's further allegation that employees based at SG I were always paid by SG I regardless of how many days they worked at SG II practically dispels the alternative possibility that they were concurrently but independently employed by both restaurants. (*Id.*) The allegations instead suggest a system in which employees were allocated across the two restaurants according to acute changes in staffing needs at both. While perhaps not as integrated as a system in which employees regularly work certain days of the week at one location and other days at a second location, the Court cannot discount that the facts pleaded do suggest a significant degree of centralized control of labor relations between SG I and SG II.

There are also other indications that the operations of the two restaurants are substantially interrelated. Plaintiff alleges, for example, that SG II would regularly prepare raw ingredients such as chili oil, hot pot soup base, and doubanjiang (spicy bean sauce) for use in both restaurants. (*Id.* at 3.) Additionally, Plaintiff alleges that the restaurants shared a website. (*Id.*) While (as Defendants argue) sharing a website may not be sufficient on its own to demonstrate integrated operations, (*see* ECF No. 52, at 18 (citing *Apolinar v. R.J. 49 Rest., LLC*, Civ. No. 15-cv-8655, 2016 WL 2903278, at *13 (S.D.N.Y May 18, 2016))), the further fact that online orders were

allegedly allocated to the location closest to the customer suggests a high degree of coordination, (ECF No. 38-7, at 3).[12]

As a non-managerial employee, Plaintiff understandably does not have access to detailed information about the financial implications of such an ordering system, or insight into other aspects of corporate structure and high-level operational control. *Cf. Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014) (explaining that Plaintiff, a "low-level employee with each of the defendant companies, has had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures"). But at the Motion to Dismiss stage, the Court concludes that Plaintiff has put forth sufficient allegations regarding the "single employer" factors to state a plausible claim that SG I and SG II operated as a "single employer." The Court's decision is based both on the procedural posture of the dispute and on the fact that a finding of a "single employer" relationship does not require all four factors to point in the same direction. *Id.*; *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001) (citing *Browning-Ferris*, 691 F.2d at 1122).

The Court further concludes that Plaintiff has pleaded sufficient allegations to establish an employer-employee relationship between himself and the combined SG enterprise, through the alleged actions of Weixiang You, who according to the Amended Complaint hired, fired, supervised, paid, and kept payroll records relating to Plaintiff. (*See* ECF No. 38, at 5.) The Motion to Dismiss with respect to SG II will be denied on the grounds that Plaintiff has plausibly alleged that SG I and SG II constitute a single employer.

---

[12] The Court also concludes that the facts alleged here are distinguishable from those in *Goh v. Nori O Inc.*, where the Court recognized the potential of a single employer theory but granted a motion to dismiss where it was "undisputed" that the Plaintiff never performed work for the second enterprise and the two involved enterprises had "separate employees and different functions." No. 2:16-CV-2811, 2020 WL 7640518, at *9 (D.N.J. Dec. 23, 2020). That case involved a restaurant and a separate catering business. *Id.* While the two businesses shared a kitchen, that space was used for two separate purposes—restaurant staff prepared dine-in and take-out food and chefs from the catering business prepared food for off-site sale. *Id.*

## IV.    CONCLUSION

The threshold question in any FLSA dispute is the existence of an employer-employee relationship, defined according to economic reality and operationalized through the *Enterprise* control test. The Court concludes that Plaintiff has not pleaded sufficient allegations to establish that any of the following Moving Defendants were his employer as defined by that test: Yongjun Zhang, Yongpeng Xia, Zhong Zhuang, Kuohwa Wang, Taimei Wang, Lotus Food Inc, and OC Partners LLC. The Motion to Dismiss (ECF No. 51) is therefore GRANTED with respect to each of those Defendants. The Court further concludes that while Plaintiff has not pleaded sufficient allegations to establish that Sichuan Gourmet II was his employer under a theory of joint employer liability, the allegations in the Amended Complaint are sufficient to establish a plausible claim that Sichuan Gourmet I and Sichuan Gourmet II were in a single employer relationship with Plaintiff. The Motion to Dismiss is therefore DENIED with respect to Sichuan Gourmet II.

An appropriate Order will follow.

_/s/ Mark R. Hornak_____
Mark R. Hornak
Chief United States District Judge

Dated: March 18, 2022
cc:     All counsel of record